**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **SHAMEL HOWELL, Individually and** | : | |
| **by and through Conservators,** | : | |
| **BIRDIE and RICHARD POGUE,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No. 5:09-CV-402 (CAR)** |
| | : | |
| **HOUSTON COUNTY, GEORGIA,** | : | |
| **CULLEN TALTON, Individually and in** | : | |
| **His Official Capacity as Sheriff of** | : | |
| **Houston County, Georgia, HOUSTON** | : | |
| **COUNTY SHERIFF=S OFFICE,** | : | |
| **CHARLES HOLT, W.H. RAPE, MATT** | : | |
| **THOMAS CHAMBERS, CHERYL** | : | |
| **KINNEY JONES, ERIC LEON BAKER,** | : | |
| **ELTON LAW, JAMES PAUL TAYLOR,** | : | |
| **SHANNON PERRY, THERESA** | : | |
| **JEAN REYNOLDS, JAMES KEITH** | : | |
| **BLAIR, GREGORY GRAHAM,** | : | |
| **TYRONE JOHNSON, and** | : | |
| **ANTONIO KADRELL ASKEW,** | : | |
| **all individually and in their official** | : | |
| **capacities,** | : | |
| | : | |
| **Defendants.** | : | |

_____

**ORDER ON DEFENDANTS= MOTIONS TO EXCLUDE EXPERT WITNESS**

**TESTIMONY**

This case concerns the treatment of Plaintiff Shamel Howell (AHowell@) at the hands of various

officers at the Houston County Detention Center on the night of January 7, 2008. Howell contends

that the officers violated his rights under the Fourth, Eighth, and Fourteenth Amendments by using

1

excessive force against him.  He also raises comparable claims under state law.

This matter comes before the Court on Defendants= Motions to Exclude Expert Witness Testimony of Andrew Scott [Docs. 58 & 59].  Defendants contend the Court should exclude the testimony of Plaintiffs putative expert under Rule 702 of the Federal Rules of Evidence and the Supreme Courts decision in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S Ct. 2786 (1993).  Having carefully reviewed the briefs, Scotts Report, and Scotts deposition, the Court concludes that Defendants= Motions [Docs. 58 & 59] should be **GRANTED**; Andrew Scott is **EXCLUDED** as an expert witness in this case.

I.

For the complete background of this case, see the Courts Order on Defendants= Motions for Summary Judgment [Doc. 97?].

In support of his case, Plaintiff Howell retained Andrew Scott as an expert witness.  In that capacity, Scott prepared a report in which he opined on: the force used against Howell by the officers of the Houston County Detention Center; the training and supervision practices of the Houston County Sheriffs Office; and the Houston County Sheriffs Offices policies and procedures.  Specifically, Scott offered the following four opinions:

Opinion 1:

The force used on Mr. Shamel Howell by members of the Houston County (GA) Sheriffs Office was excessive, unnecessary, and wanton when Mr. Howell was simultaneously TASED, punched, and kicked into submission.  The actions of the members of the Houston County (GA) Sheriffs Office were inconsistent with standard correctional practices and procedures and the force used was unreasonable.

2

Opinion 2:

   The members of the Houston County (GA) Sheriff's Office involved in the Howell incident were not properly trained to recognize inmates suffering from mental/emotional illness thus contributing to the excessive and unnecessary force used against Mr. Howell. Similar, members of the Houston County (GA) Sheriff's Office were not properly trained in the proper use of force on inmates.  The supervisory staff involved in the incident was not properly trained in supervisory/management skills.  This overall failure to train the members of the Houston County (GA) Sheriff's Office resulted in the excessive force against Mr. Howell.

Opinion 3:

   The Houston County (GA) Sheriff's Office failed to provide adequate supervision and guidance to the Sheriff's Office members involved in this incident.  As a result of this inadequate supervision a pattern and practice of excessive force and mistreatment of inmates in the detention facility was allowed to occur.  Supervisory staff involved in this incident was aware of the rogue behaviors of certain detention deputies and did not address this type of behavior.  Based on this failure and deliberate indifference by the Sheriff's Office to properly supervise members of the detention facility, it was foreseeable that the incident involving Mr. Howell would occur.  Had proper supervision been provided the incident involving Mr. Howell would have been mitigated or prevented.

Opinion 4:

   Several policies of the Houston County (GA) Sheriff's Office Detention Facility Policy and Procedures Manual are limited in scope, provide too little guidance for its members and

overall are inadequate.  Specifically, the Use of Force policy provides limited guidance as to

when and how force can be used in a detention setting.  Also, policies related to supervisory

training and mentorship provides little assistance in the mentoring and training of supervisory

staff within the detention facility.

[Doc. 72-1].

II.

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and it states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts
> or data, (2) the testimony is the product of reliable principles and methods, and (3) the
> witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.  Under Rule 702, relevant expert testimony is admissible if: (1) the expert is

qualified to testify about the matters he intends to address; (2) the methodology used by the expert to

reach his conclusions is sufficiently reliable; and (3) the expert=s testimony will assist the trier of fact,

through the application of scientific, technical, or specialized expertise, to understand the evidence or

determine a fact in issue. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir.

2002) (citing Maiz v. Virani, 253 F.3d 641, 664 (11th Cir. 2001)).

As the Supreme Court noted in Daubert v. Merrell Dow Pharmaceuticals, Inc., Rule 702

imposes a duty on trial courts to act as Agatekeepers@ to insure that speculative and unreliable

opinions do not reach the jury. 509 U.S. 579, 589 n. 7, 113 S. Ct. 2786 (1993); McClain v.

Metabolife Int'l, Inc., 401 F.3d 1233, 1237 (11th Cir. 2005).  The overall objective of the gatekeeping

requirement is to make certain that expert witnesses employ in the courtroom the Asame level of

intellectual rigor that characterizes the practice of an expert in the relevant field.@ <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152, 119 S. Ct. 1167 (1999); <u>Goebel v. Denver & Rio Grande W. R.R. Co.</u>, 346 F.3d 987, 992 (10th Cir. 2003). The court=s gatekeeping role is especially significant, since Athe expert=s opinion can be both powerful and quite misleading because of the difficulty in evaluating it.@ <u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004).

To fulfill its role as a gatekeeper, the trial court must determine whether the expert has the requisite qualifications to offer his opinions. <u>Poulis-Minott v. Smith</u>, 388 F.3d 354, 359 (1st Cir. 2004); <u>Frazier</u>, 387 F.3d at 1260B61. The trial court must also Aconduct an exacting analysis= of the foundations of expert opinions to ensure that they meet the standards for admissibility under Rule 702.@ <u>Frazier</u>, 387 F.3d at 1260 (quoting <u>McCorvey</u>, 298 F.3d at 1257). Finally, the court must Aensure the relevancy of expert testimony,@ meaning that it must determine whether the testimony will assist the trier of fact. <u>Daubert</u>, 509 U.S. at 591, 113 S.Ct. 2786.

Expert testimony assists the trier of fact Aif it concerns matters that are beyond the understanding of the average lay person.@ <u>Frazier</u>, 387 F.3d at 1262. A[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.@ <u>Id.</u>  Nor does expert testimony help the trier of fact if it fails to Afit@ with the facts of the case.  <u>McDowell v. Brown</u>, 392 F.3d 1283, 1298 (11th Cir. 2004).  Expert testimony lacks Afit@ when Aa large analytical leap must be made between the facts and the opinion.@ <u>See</u> <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 147, 118 S. Ct. 512 (1997). AA court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.@ <u>Id.</u>  Thus, the court may exclude otherwise reliable testimony if it does not have Asufficient bearing on the issue at hand to warrant a determination that it [is >]helpful= to the trier of fact].@ <u>Bitler v. A.O. Smith Corp.</u>, 391 F.3d

1114, 1121 (10th Cir. 2004).

III.

The Court will *assume without deciding* that Scott is qualified to testify about the matters addressed in his Report and that the methodology he used to reach his conclusions is sufficiently reliable.  Nevertheless, his testimony must be excluded because it does not assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.

A.      Opinions 2, 3, and 4

Opinions 2, 3, and 4 of Scott's Report all concern the training, supervision, and policies of the Houston County Sheriff's Office.  Those opinions are relevant to his claims against supervisory officials in the Sheriff's Office.  They are not relevant to the question of whether the officers directly involved in the incident used excessive force against Howell in violation of his Fourteenth Amendment rights.  In its Order on the Motions for Summary Judgment, the Court granted summary judgment in favor of all supervisory officers on Howell's claims that they showed deliberate indifference to his constitutional rights based on inadequate training or their knowledge of the so-called "Hardliners" group.  As a result, his opinions on the adequacy of the training, supervision, or policies of the Sheriff's Office are not relevant to a fact that is at issue any longer in the case.

As detailed in the Order on the Motions for Summary Judgment, the issue of supervisory liability turns not just on whether the training was inadequate, but also on whether a widespread history of abuses existed to alert the supervisors to the need for better training.  The bulk of Scott's opinions deal with that first question: the adequacy of the training or policies.  The Court expresses no opinion on the merits of the methodology that Scott used to reach his conclusions as to the

6

adequacy of the training and policies.  The Court's decision on summary judgment turned instead on Howell's lack of evidence of a widespread history of abuses that would have alerted to supervisors to the need for more or better training.  The only statement in Scott's Report relevant to that question was as follows:

> As a result of this inadequate supervision a pattern and practice of excessive force and mistreatment of inmates in the detention facility was allowed to occur.  Supervisory staff involved in this incident was aware of the rogue behaviors of certain detention deputies and did not address this type of behavior.  Based on this failure and deliberate indifference by the Sheriff's Office to properly supervise members of the detention facility, it was foreseeable that the incident involving Mr. Howell would occur.

With all due respect to Mr. Scott and his expertise in law enforcement matters, the Court applied the facts of the case concerning prior incidences and determined, as a matter of law, that those incidences did not constitute a widespread history of abuses that would have alerted the supervisors to a need for more and better training.  Regardless of Scott's opinion on the matter, the question of whether Howell presented sufficient evidence of prior abuses to survive summary judgment is a legal question, and the Court answered that legal question in the negative.  Having answered that question in the negative, the remainder of Scott's opinions regarding the adequacy of the training, supervision, and policies of the Sheriff's Office all concern facts no longer in issue in the case.

B.      Opinion 1

Opinion 1, however, does concern a matter that is still disputed in this case: the use of force by particular officers against Howell.  Opinion 1 consists of two main statements.  First, the force used against Howell was excessive, unnecessary, wanton, and unreasonable.  Second, the force used against Howell was inconsistent with standard correctional practices.  The second statement is irrelevant.  As discussed in the Summary Judgment Order, the question of whether the officers

7

violated Howell's Fourteenth Amendment rights cannot be answered by reference to specific departmental regulations or standard practices. See Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009); Ensley v. Soper, 142 F.3d 1402, 1407 n.4 (11th Cir. 1998) (plaintiff "cannot base a § 1983 claim solely on an alleged violation of non-federal law"). Standard practices or departmental regulations do not set a constitutional floor. Here, the constitutional question is whether the officers acted with a malicious and sadistic intent to harm Howell. That they may have violated departmental regulations does little to answer that question.

Finally, Scott's opinion that the force used against Howell was excessive, unnecessary, wanton, and unreasonable speaks to questions that are not beyond the understanding of the average lay person. See Frazier, 387 F.3d at 1262. The jury will be able to hear the testimony of the officers and watch the same video that Scott watched. From that evidence, they will be asked to decide whether the officers acted in a good faith attempt to restore order or with a malicious and sadistic intent to cause Howell harm. They average lay juror will not need the benefit of Scott's opinion as to what the video shows in order to determine the officers' intent in the incident. Questions regarding the reasonableness, excessiveness, or wantonness of an officer's actions are matters left to the jury's determination, and Scott's opinions on the matter simply instruct the jury what result to reach. Such testimony is unnecessary and unhelpful to the trier of fact. See Haflich v. Macleod, No. CV 09-161, 2011 WL 65877, at *4 (D. Mont. Jan. 10, 2011) ( Generally, an expert witness may not express an opinion as to the reasonableness or excessiveness of a law enforcement officer's use of force. Expert opinion testimony concluding the officer's conduct was "not justified," "not warranted," and "totally improper" expresses legal conclusions and "conclusory condemnations" of the officer's conduct, and merely instructs the jury as to the result it should reach.@(quoting Hygh v. Jacobs, 961 F.2d 359, 364

(2nd Cir.1992)).

IV.

As set forth above, the Court finds that Scott=s opinions either concern matters that are no longer at issue in the case or are conclusory opinions that will not assist the trier of fact because they related to matters within the jury=s understanding and simply instruct the jury on the result it should reach.  Accordingly, Scott=s opinions must be excluded under Rule 702 and <u>Daubert</u>.  Defendants= Motions [Doc. 58 & 59] are **GRANTED**; Mr. Scott=s expert testimony is **EXCLUDED**.

SO ORDERED this 26th day of August, 2011.

S/  C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

bcw